UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TUESDAY L. WEDDLE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Deputy Commissioner of Operations, ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | No. 2:17 CV 85 DDN |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Deputy Commissioner of Social Security denying the application of plaintiff Tuesday L. Weddle for Disability Insurance Benefits under Title II and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*; 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is reversed and the action remanded for further administrative proceedings.

## BACKGROUND

Plaintiff Tuesday L. Weddle, born December 26, 1970, applied for Title II and Title XVI benefits on August 26, 2014. (Tr. 275-82). She alleged a disability onset date of July 22, 2013, due to depression, bipolar disorder, learning disabilities, panic attacks, and dizzy spells. (Tr. 176-77). Plaintiff's application was initially denied on October 22, 2014. (Tr. 200-01).

On December 11, 2014, plaintiff requested a hearing before an ALJ. (Tr. 212-13). On July 27, 2016, the ALJ heard testimony from plaintiff and Vocational Expert ("VE") Abby May. (Tr. 156-69). On September 8, 2016, the ALJ found that plaintiff was not disabled. (Tr. 108-21). On October 4, 2017, the Appeals Council denied plaintiff's request for review. (Tr. 1-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record. More specifically, plaintiff argues that the ALJ erred by failing to determine that plaintiff's mental impairments met the "Paragraph B" criteria of Listings 12.04, 12.06, or 12.08 (the "Paragraph B criteria"). Plaintiff also argues that the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating psychiatrist, David Goldman, DO. Plaintiff asks that the Court reverse the ALJ's decision and grant benefits to plaintiff or, alternatively, that the case be remanded to the ALJ for further proceedings.

**Medical Record and Evidentiary Hearing**

The Court adopts plaintiff's unopposed Statement of Facts (Doc. 12-2) along with defendant's unopposed Statement of Additional Facts (Doc. 21-2). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court will discuss specific facts as they are relevant to the parties' arguments.

**ALJ's Decision**

The ALJ found that plaintiff has not engaged in substantial gainful activity[1] since the alleged disability onset date and that plaintiff has the following severe impairments:

---

[1] The plaintiff worked in various jobs since her disability onset date, but there is a difference between having a short-term job and substantial gainful activity. "Substantial gainful activity means the performance of substantial services with reasonable regularity

2

bipolar disorder, depression, anxiety, attention deficit hyperactivity disorder ("ADHD"), schizoaffective disorder, and history of substance abuse. (Tr. 113-14). However, the ALJ found that none of plaintiff's impairments, either individually or in combination, met the severity requirements listed in the Commissioner's regulations. (Tr. 114-15). The ALJ found that the Paragraph B criteria[2] – whether plaintiff had at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration – were not met because plaintiff had only moderate restrictions in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (*Id.*)

In finding that plaintiff had only moderate restriction in activities of daily living, the ALJ noted she had no problem with personal care despite not wanting to do it some days, she could prepare meals for herself, and she could perform household chores. (Tr. 114-15, 339-43). Because plaintiff had "some difficulty" caring for her personal and household needs, the ALJ found that plaintiff had "moderate restriction" in daily living activities. (Tr. 114).

The ALJ found that plaintiff had only moderate difficulties in social functioning. (Tr. 115). The ALJ pointed to evidence in the record showing that plaintiff experienced panic attacks when she is around a lot of people and nervousness when she shops at the grocery store. (Tr. 146-47, 343). However, the ALJ also pointed out evidence showing

---

either in a competitive environment or self-employment." *Walton v. Astrue*, 664 F. Supp. 2d 1000, 1028 (E.D. Mo. 2009) (quoting *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

[2] The SSA revised the Paragraph B criteria effective January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (September 26, 2016) (to be codified at 20 C.F.R. pts. 404, 416). Because this change occurred after the ALJ's decision in this case (September 8, 2016), the earlier criteria are discussed here.

that plaintiff gets along with others, spends time with other people while taking walks, and enjoyed going out with friends for her birthday. (Tr. 343, 510). Because plaintiff had "some difficulty" interacting with others, the ALJ determined that plaintiff had "moderate difficulties" in social functioning. (Tr. 115).

The ALJ further found that plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (*Id.*) The ALJ noted that plaintiff experienced some difficulty remembering what she had read, and that plaintiff testified she had difficulty staying on-task. (Tr. 115, 141, 343-44). The ALJ noted that plaintiff spent much of her time reading, watching television, and playing computer games. (Tr. 115, 154-55, 348). The ALJ found that each of these activities require a degree of focus and attention. (Tr. 115). As a result, the ALJ found that plaintiff had "moderate difficulties" in concentration, persistence, or pace. (*Id.*)

Plaintiff claimed no episodes of decompensation of extended duration, and there is no evidence of any such episode in the record.

Finding that plaintiff did not suffer "marked" limitations in at least two of the above areas, or one "marked" limitation coupled with "repeated" episodes of decompensation, the ALJ concluded that plaintiff did not meet the Paragraph B criteria and therefore was not deemed to be disabled. (Tr. 115).

The ALJ assessed plaintiff's residual functional capacity ("RFC"), and found that plaintiff was able to perform a full range of work at all exertional levels, but with some nonexertional limitations. (Tr. 116-19). Among these limitations, plaintiff was limited to remembering and carrying out simple routine tasks and making simple work-related decisions. (Tr. 116). Additionally, the ALJ found that plaintiff could not perform production pace tasks and would be off-task 10% of the time. (*Id.*) However, the ALJ found that plaintiff could have frequent contact with supervisors, coworkers, and the general public. (*Id.*)

In making the RFC determination, the ALJ found that although plaintiff described disabling symptoms resulting from her medical impairments, the record was not substantially consistent with that conclusion. (Tr. 117). The ALJ noted that plaintiff had

4

worked[3] since the alleged disability onset date and planned to quit a job because she did not like the hours (Tr. 117, 454); that plaintiff could care for a pet cat as well as herself (Tr. 117, 145, 340); and that her mental status exam results showed normal behavior, speech, thought processes, and judgment (Tr. 117, 416, 421, 426, 431, 435, 438-39, 646, 652, 657, 667, 672, 677, 686).

In sum, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 117). Additionally, the ALJ gave "little weight" to plaintiff's GAF scores, which ranged from 42 to 45. (Tr. 118, 419, 423, 428, 432, 437, 439, 442, 653, 658, 663). In doing so, the ALJ pointed out that Dr. Goldman, plaintiff's treating psychiatrist who assigned these scores, determined plaintiff's mental status exam results to be normal despite the GAF scores. (Tr. 118).

The ALJ gave "little weight" to plaintiff's treating psychiatrist, Dr. Goldman. (Tr. 119). Although Dr. Goldman stated that the claimant had "marked limitations" in ability to understand, remember, and carry out simple or complex instructions and make judgments on simple work-related decisions; "extreme limitations" in making judgments on complex work-related decisions; and "marked limitations" in ability to interact with supervisors, coworkers, or the public (Tr. 701-03), the ALJ found that Dr. Goldman's opinion was "largely unsupported by his treatment notes" considering that Dr. Goldman consistently found plaintiff's medical status exam results were normal. (Tr. 119). The ALJ further added that the limitations described by Dr. Goldman were not warranted in light of the rest of the record, and determined that his opinion would be given little weight. (Tr. 119, 416, 421, 426, 431, 435, 438-39, 646, 652, 657, 667, 672, 677, 686).

---

[3] Plaintiff's entire work history after the alleged onset date is unclear, but appears to at least include some short-term employment at a gas station that lasted from mid-September 2014 through early October, 2014 (*See* Tr. 446, 450, 454, 470).

The ALJ gave "partial weight" to the opinion of James W. Morgan, Ph.D., a Disability Supporting Services consulting psychologist. (Tr. 118-19). Dr. Morgan did not conduct an in-person examination of plaintiff, but did have access to plaintiff's medical records when making his determination. (Tr. 176-99). Dr. Morgan found that plaintiff had moderate restriction of activities in daily living, mild difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration. (Tr. 181). Dr. Morgan opined that plaintiff could perform simple repetitive tasks on a sustained basis and that plaintiff had the RFC to adjust to other work and therefore was not disabled. (Tr. 181-82).

The ALJ ultimately determined that plaintiff's RFC would not allow her to perform her past relevant work as a cashier. (Tr. 119-20). Further, the ALJ relied on testimony of the VE to determine that plaintiff could perform jobs—such as laundry worker, storage facility clerk, and sandwich maker—which existed in significant numbers in the national economy. (Tr. 120-21, 156-69). The VE made this determination based on a hypothetical claimant's RFC, age, education, and work experience that matched the plaintiff's. (Tr. 156-69). Because a significant number of jobs that plaintiff could perform existed in the national economy, the ALJ concluded that plaintiff was not disabled under the Social Security Act. (Tr. 121).

## DISCUSSION

**Standard of Review and Statutory Framework**

This Court will uphold the Commissioner's decision denying Social Security benefits if the decision is supported by substantial evidence. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). In making this determination, courts "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)). Substantial evidence means "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Jones*, 619 F.3d at 968. (quoting

*Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). Further, courts "must consider evidence that both supports and detracts from the ALJ's decision," but may not reverse the ALJ's decision "simply because some evidence may support the opposite conclusion." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)). Courts are required to defer heavily to the ALJ's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

To be entitled to disability benefits, a claimant must show an inability to perform any substantial gainful activity which exists in the national economy because of a medically determinable impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Regulations promulgated by the Commissioner establish a five-step evaluative process for determining disability. 20 C.F.R. § 404.1520.

At Step One of the process, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, benefits are denied. If not, the Commissioner moves to Step Two. At Step Two, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). In evaluating mental disorders under this step, the Commissioner must rate the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the impairment or a combination of impairments is severe and meets the durational requirement, the Commissioner moves on to Step Three. At Step Three, the Commissioner must determine whether the impairment or combination of impairments meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If so, the claimant is determined to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis moves to Step Four. At Step Four, the Commissioner must determine whether the claimant's RFC is such that she can perform her past relevant work. If the claimant can perform her past relevant work, then claimant is determined not to be disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the

Commissioner must move to Step Five and determine whether the claimant's RFC is such that she can perform work that is both available in the national economy and consistent with her vocational factors, namely the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). "If the ALJ determines the claimant cannot resume her prior occupation, the burden shifts to the Commissioner at step five to show the claimant is capable of performing other work." *Jones*, 619 F.3d at 971 (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)).

The determination of a claimant's RFC is "a medical question." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (quoting *Ford v. Secretary of Health and Human Services*, 662 F.Supp. 954, 955 (W.D. Ark. 1987)). In making such a determination, the ALJ has a duty to fully and fairly develop the record. *Id.* at 857-58. Relying solely on non-treating, non-examining sources does not satisfy this duty. *Id.* at 858. Such evidence ordinarily is not considered to be "substantial evidence on the record as a whole." *Id.* (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)). Further, the ALJ is not permitted to draw upon her own inferences from medical reports. *Id.* (citing *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)). If the ALJ determines that sufficient work is available in the national economy that the claimant can perform, the claimant is determined not to be disabled. Otherwise, the claimant is determined to be disabled.

**Determination of Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ's determination at Step Three, that plaintiff's mental impairments did not meet Listings 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), or 12.08 (Personality and impulse-control disorders), is not supported by substantial evidence. (Doc. 14 at 7). Specifically, plaintiff argues that the ALJ erred by determining that plaintiff did not meet the Paragraph B criteria under each listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B), 12.08(B). The Court disagrees. There is substantial evidence supporting the ALJ's decision that plaintiff did not meet or equal a listed impairment under the Paragraph B criteria.

At Step Three of the evaluative process, the ALJ is required to consider the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). If the claimant is found to meet or equal one of the listings and the impairment also meets the durational requirement, then the claimant is determined to be disabled. *Id*. In determining whether the claimant's impairment meets or equals a listing, the Commissioner considers "all evidence in [the] case record" regarding the impairment and its effects, including the opinion(s) given by any medical or psychological consultant designated by the Commissioner, but excluding vocational factors which are included in Step Five of the process. 20 C.F.R. § 404.1526(c); 20 C.F.R. § 416.926(c). In cases that are heard by an ALJ or the Appeals Council, the responsibility for deciding medical equivalence belongs to the ALJ. 20 C.F.R. § 404.1526(e)(3); 20 C.F.R. § 416.926(e)(3). Even if an express explanation is omitted, an ALJ's omission of an explanation regarding why the claimant's impairment does not meet or equal a listing is not an error, provided that the ALJ's overall conclusion is supported by the record. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).

In determining that plaintiff had "moderate" restriction in activities of daily living, the ALJ noted that plaintiff stated in her functional report that she has no issues maintaining her personal care, other than that she sometimes doesn't feel like doing it. (Tr. 114, 340). The ALJ further relied on plaintiff's statement that she prepares simple meals, and can perform household chores. (Tr. 114, 341). However, plaintiff has difficulty completing the chores because she finds it difficult to remain on-task, and also has difficulty managing her finances. (Tr. 341-42). In determining that plaintiff had "moderate" difficulties in social functioning, the ALJ specifically mentioned information from plaintiff's functional report. (Tr. 115, 343-44). The ALJ found that plaintiff regularly spent time with friends, but did have panic attacks around larger groups of people. (Tr. 343). The ALJ also determined that plaintiff had "moderate" difficulties in concentration, persistence, and pace, and pointed to various examples in the record regarding plaintiff's memory and her ability to understand and follow instructions. The ALJ noted that plaintiff enjoyed playing video games, reading, and watching television.

(Tr. 115, 343, 348). The ALJ acknowledged that plaintiff did have difficulty staying on-task, however, and that a finding of "moderate" difficulties was warranted. (Tr. 115). The ALJ appears to have considered all the evidence in the record in arriving at her decision, and the Court concludes that the ALJ's decision is supported by substantial evidence.

Plaintiff argues that her history of Global Functioning Assessment ("GAF") scores is evidence of "marked" or "extreme" limitations in the claimed Listings. Ten GAF scores were included in the record and ranged from 42 to 45. (Tr. 118, 419, 423, 428, 432, 437, 439, 442, 653, 658, 663). According to the DSM-IV, GAF scores in the range of 41 to 50 denote "serious symptoms . . . [or] any serious impairment in social, occupational, or school functioning."[4] These scores were considered by the ALJ and discussed in her decision. (Tr. 118). Ultimately, the ALJ gave little weight to plaintiff's GAF scores, noting that the GAF scale "does not have a direct correlation to the severity requirements" of the mental disorder listings. (*Id.*); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,764-65 (Aug. 21, 2000). The ALJ also noted that these scores conflicted with the results of mental status examinations performed by Dr. Goldman. (Tr. 118-19, 416, 421, 426, 431, 435, 438-39, 646, 652, 657, 667, 672, 677, 686).

Plaintiff invokes *Pate-Fires v. Astrue* for the proposition that a history of GAF score below 50 is evidence of disability. (Doc. 14 at 8). However in that case, the Eighth Circuit found that the ALJ erred because "[t]he ALJ *failed to discuss or consider* the many GAF scores below 50" which were at issue in that case, not because the ALJ found those scores were outweighed by other evidence. 564 F.3d 935, 944 (8th Cir. 2009)

---

[4] *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). Notably, the Global Assessment Function framework was discarded from the DSM-5 in part due to "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

(emphasis added). Here, the ALJ discussed plaintiff's GAF scores in detail but found other evidence in the record to be more persuasive. (Tr. 118).

Plaintiff further contends that, by determining plaintiff was not disabled, the ALJ ignored an "overwhelming number of negative notes" in the record. (Doc. 14 at 10). However, the ALJ acknowledges plaintiff's "anxiety, sadness, depression, and tearfulness" as well as medical diagnoses of schizoaffective disorder, panic disorder, social phobia, and other disorders. (Tr. 117-18). Explaining her reasoning, the ALJ noted that "[Plaintiff] described activities of daily living that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Tr. 117). The ALJ noted that plaintiff could care for herself as well as her pet cat (Tr. 117, 145, 340), that plaintiff planned to quit a job because she did not like the hours (Tr. 117, 454), that plaintiff was employed sporadically after the alleged onset date in jobs that were beyond her capabilities as described in the RFC (Tr. 117, 133-38), and that plaintiff's subjective complaints were "out of proportion" with the objective medical evidence. (Tr. 117, 416, 421, 426, 431, 435, 438-39, 646, 652, 657, 667, 672, 677, 686). In other words, the ALJ did not ignore plaintiff's negative treatments, but merely found them to be ultimately unpersuasive in light of all the evidence in the record.

Because substantial evidence supports the ALJ's decision that plaintiff did not meet or equal a listed impairment under the Paragraph B criteria, the Court will not disturb the ALJ's finding at Step Three.

**Weight According Medical Opinion Evidence**

Plaintiff next argues the ALJ erred by not giving controlling weight to plaintiff's treating physician's opinion regarding plaintiff's RFC. (Doc. 14 at 11). The Court finds that, in the absence of any treating or examining medical sources relied upon by the ALJ, the ALJ's decision at Step Five was not supported by substantial evidence.

The Commissioner bears the burden at Step Five to show that plaintiff's RFC enables her to perform qualifying work. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). If there is no evidence from a firsthand medical provider on this matter, the

Commissioner must fully and fairly develop the record. *Id.* An ALJ has the responsibility to "develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012).

Because the ALJ must evaluate the record as a whole, opinions of treating physicians are not automatically controlling. *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014). For a claimant's treating physician's opinion to be entitled to controlling weight, it must be supported by medically acceptable clinical and diagnostic techniques and must not be inconsistent with other substantial evidence in the record. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). A treating physician's opinion may be discounted either where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician gives inconsistent opinions that undermine the credibility of such opinions. *Id*. Non-treating, non-examining sources do not constitute substantial evidence upon which the ALJ can rely. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Further, "[a]n administrative law judge may not draw upon his own inferences from medical reports." *Id.* (quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975)).

In this case, the Court concludes that the ALJ's discounting of Dr. Goldman's opinion was not supported by substantial evidence. Dr. Goldman indicated that plaintiff had "marked" or "extreme" limitations relevant to plaintiff's RFC in the Medical Source Statement (Tr. 701-03). It appears that the ALJ did not assign controlling weight to Dr. Goldman's opinion for two reasons.

First, although the ALJ did not explicitly say so, the ALJ appeared to find that Dr. Goldman's opinion was outweighed by the opinion of the non-treating, non-examining DSS consultant, Dr. Morgan. (*See* Tr. 118-19). The ALJ stated that "Dr. Morgan found that [plaintiff] has the ability [to] perform simple repetitive tasks on a sustained basis."

(Tr. 118). However, the opinions of non-treating, non-examining sources are not generally considered to be substantial evidence at Step Five. *Nevland*, 204 F.3d at 858. Therefore, Dr. Morgan's opinion cannot be considered substantial evidence of plaintiff's RFC at Step Five.

Second, the ALJ determined that Dr. Goldman's treatment notes contradicted his opinion given in his Medical Source Statement. (Tr. 119). The ALJ says that several reports of "normal" functioning contradict Dr. Goldman's Medical Source Statement. (*Id.*) However, this determination is based on the ALJ's own inferences of what Dr. Goldman meant when entering his treatment notes. Because the ALJ relied on her own interpretation of what the treating physician's treatment notes meant, the ALJ impermissibly drew upon her own inferences and also failed to fully and fairly develop the record.

Even if the ALJ did not err in discounting Dr. Goldman's opinion, without that opinion, there is no firsthand medical evidence in the record for the Step Five analysis. *See Nevland*, 204 F.3d at 857. Once an ALJ has determined that a claimant is incapable of performing past relevant work at Step Four – as the ALJ did here – the Commissioner must show at Step Five that plaintiff is capable of competitive employment in the national economy. *Id.* at 857-58 (citing *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975)). The ALJ is entitled to weigh various medical opinions, but is not free to make independent medical findings or to draw inferences from medical reports. *Id; Pate–Fires*, 564 F.3d at 946–47. Nor may the ALJ rely exclusively on the opinion of a non-treating, non-examining physician, even if the non-treating source reviewed the reports of treating physicians. *Nevland*, 204 F.3d at 857-58.

If the ALJ properly discounted Dr. Goldman's opinion, then the record is underdeveloped, as there is no other medical evidence in the record from any treating medical providers about plaintiff's ability to function in the workplace. *Nevland*, 204 F.3d at 858. Thus, while plaintiff's impairments prevent her from doing past work, and a non-treating, non-examining physician's opinion is sufficient to establish this at Step Four*, see id.*, it is unclear how her impairments affect her RFC to do other work without

13

the ALJ resorting to medical conjecture at Step Five. In this case, on remand, the ALJ must obtain clarifying information from a medical source with relevant expertise. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). The ALJ also must clarify or augment the record, because the medical evidence is insufficient, which may include contacting the treating physician, requesting additional records, ordering a consultative examination, or asking plaintiff or others for additional information. 20 C.F.R. § 404.1520b (2012); see also 77 Fed. Reg. 10655 (Feb. 23, 2012).

Based on a review of the ALJ's decision and the record, the Court concludes that the ALJ's decision at Step Five is not supported by substantial evidence.

## CONCLUSION

Accordingly, the decision of the Commissioner is reversed and the action is remanded for further proceedings consistent with this opinion. A separate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 20, 2018.